**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **MONROE OLIVER, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No: 5:23-cv-00111-TES-CHW** |
| | : | |
| **Doctor BROWN,** | : | **Proceedings Under 42 U.S.C. § 1983** |
| | : | **Before the U.S. Magistrate Judge** |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

Before the Court is a combined motion for judgment on the pleadings and motion for summary judgment filed by Defendant Doctor Kevin Brown. (Doc. 76). Plaintiff Monroe Oliver did not respond to the motion. As discussed below, Plaintiff's complaint adequately set forth a claim for deliberate indifference, but the undisputed facts in the record show that Defendant Brown was not deliberately indifferent to Plaintiff's serious medical need. It is therefore **RECOMMENDED** that the motion for judgment on the pleadings be **DENIED** and the motion for summary judgment (Doc. 76) be **GRANTED**.

## BACKGROUND

In this Section 1983 lawsuit, Monroe Oliver, Jr., a *pro se* inmate, sued Defendant Brown, a Wellpath, LLC, physician working at Washington State Prison, where Plaintiff was incarcerated from 2019 to 2021. (Docs. 1; 13; 76-4, p. 2). Following the screening of Plaintiff's recast complaint (Doc. 13), Plaintiff's claim against Defendant Brown was permitted to move forward with claims of deliberate indifference based on a delay in performing recommended hip surgery, which caused Plaintiff significant pain and worsened his condition. (Doc. 14).

Defendant Brown initially filed for summary judgment in August 2024 (Doc. 44), but

following a series of clerical errors and an automatic stay in Wellpath's bankruptcy case, the original motion was terminated without prejudice. *See* (Docs. 46, 47, 50-53, 57). Once the bankruptcy stay was lifted, Plaintiff moved for permission to continue his case against Defendant Brown as a non-debtor defendant, which the bankruptcy court granted. *See* (Docs. 57, 69, 73). Because Plaintiff's claim survived the bankruptcy case, the Court set a dispositive motion deadline of December 1, 2025. (Doc. 74). In that order, the Court advised new defense counsel of the clerical issues surrounding the prior motion for summary judgment so that Plaintiff would receive the motion. (*Id*., p. 2). Defendant moved for both for judgment on the pleadings for failure to state a claim and for summary judgment (Doc. 76), and the Clerk of Court provided notice of the motion to Plaintiff. (Doc. 77). That notice was not returned to the Court, and Plaintiff did not respond to the motion. (*See Docket*). There is nothing on the docket to suggest that Plaintiff failed to receive notice about the Defendant's motion.

**RELEVANT FACTS**

Plaintiff's claim in this case arises from his medical treatment at Washington State Prison (WSP), where he was housed from 2019 until 2021, before being transferred to Coastal State Prison.[1] (Doc. 13, 14, 76-4, p. 2). Plaintiff described significant hip pain caused by bone on bone grinding, for which he had been prescribed a wheelchair and referred for surgery. (Doc. 14, p. 3). Plaintiff alleged that Defendant Brown intentionally delayed medical care despite the recommendation for surgery and Plaintiff's serious pain and that Defendant Brown told Plaintiff he could receive the surgery once he was in the custody of the federal Bureau of Prisons. (*Id*., p. 4; Doc. 13, p. 6). Plaintiff alleged that other practitioners told him the delay in treatment and surgery had worsened his condition. (Doc. 14, p. 4).

[1] Plaintiff's complaint suggests that his claim spans 2019 to 2022 (Doc. 13, p. 5), but records show that Plaintiff transferred from WSP to Coastal State Prison in July 2021. (Doc. 76-4, p. 2).

Plaintiff was in the custody of the Georgia Department of Corrections (GDC) from 2003 to 2022, and was housed at WSP from February 21, 2019 to July 15, 2021. (Doc. 76-2, ¶¶ 1-5). Prior to his incarceration, Plaintiff had sustained severe injuries in a 2000 car accident, and he had reported ongoing related hip pain and complications during his incarceration since at least 2016. (*Id*. ¶ 6). From the time that Plaintiff entered WSP in February 2019 until he was transferred to Coastal State Prison in July 2021, prison staff routinely saw and treated Plaintiff for his hip pain. *See generally*, (Doc. 76-2; 76-4; 76-5). This treatment included prescribing pain medication, routine monitoring, specialist referrals, and diagnostic testing, culminating in an August 2019 referral for a hip biopsy after an x-ray, MRI, and CT scan showed lesions and a possible tumor of the right hip. *See* (Doc. 76-5, ¶¶ 3-33). Plaintiff was transported to Augusta State Medical Prison (ASMP) in September 2019 to undergo a CT-guided biopsy, but Plaintiff refused to consent to the procedure just before it began. (Doc. 76-4, p. 23, 24, 48, 65; Doc. 76-5, p. 172-173, 185). Upon his return to WSP, NP Chi-Ukpai encouraged Plaintiff to return to the clinic if he changed his mind about the procedure. (Doc. 76-4, p. 67). Although Plaintiff saw other treatment providers at WSP and ASMP prior to his biopsy refusal, it appears that Defendant Brown saw Plaintiff only once during that time frame, on June 3, 2019, following his CT scan. (Doc. 76-2, ¶ 24).

The record indicates that in June and July 2020, Plaintiff told medical staff he wanted to pursue the biopsy but expressed a desire to postpone the procedure due to the COVID-19 pandemic. (Doc. 76-2, ¶ 40). Prison medical staff continued Plaintiff's Mobic prescription and renewed his profile for no prolonged standing. (Doc. 76-5, p. 92). Dr. Brown referred Plaintiff for another orthopedic consultation and reevaluation in September 2020 after Plaintiff again stated he wanted to have the biopsy. (Doc. 76-4, p. 134, 145).

While it is unclear from the record how Plaintiff presented to prison medical staff, Defendant verbally ordered that Plaintiff be transported to Washington County Regional Medical Center to treat his hip pain and to rule out a fracture on October 20, 2020. (Doc. 76-4, p. 21, 44, 135). Following Plaintiff's follow-up appointment with Defendant on October 22, 2020, Defendant asked that Plaintiff's orthopedic clinic appointment approval be expedited. (*Id*., p. 142). Defendant also indicated that transfer to ASMP would be likely. (*Id*.) The consultation referral for biopsy and surgical re-evaluation for multiple bone spurs with Dr. Homlar was approved in November 2020. (Doc. 76-4, p. 16, 18)

Defendant saw Plaintiff on March 23, 2021, and April 19, 2021, when Defendant made additional consultation referrals for Plaintiff's hip surgery. (Doc. 76-4, p. 14, 123). Plaintiff was approved for an orthopedic consult as of April 6, 2021. (Doc. 76-4, p. 14). On April 30, 2021, Defendant approved a cardiology consult to receive surgical clearance (Doc. 76-4, p. 124-125), and Plaintiff was transported to ASMP for a consult on May 20, 2021. (Doc. 76-4, p. 11). Plaintiff saw orthopedist Dr. DeCoons who stated that Plaintiff needed to see Dr. Homlar in the emergency department at Augusta University Medical Center (AUMC). (Doc. 76-5, p. 68). Following Dr. DeCoons's recommendation, Defendant Brown saw Plaintiff at WSP on May 25, 2021, and on July 13, 2021. (*Id*., p. 221, 222). He noted all the diagnostic testing that Plaintiff had received, noted that Plaintiff needed to use a wheelchair for 6 months, and recommended that Plaintiff be placed in a 24-hour facility pending a total hip replacement. (*Id*.)

Plaintiff was transferred to Coastal State Prison on July 15, 2021. (Doc. 76-4, p. 2). Plaintiff's first appointment after transferring to Coastal State Prison was on August 16, 2021, where he continued to undergo testing for surgical clearance. (Doc. 76-4, p. 213). In September 2021, CSP treatment providers recommended that Plaintiff be sent to ASMP again for an urgent

consultation with a hip specialist for hip reconstruction surgery. *See* (Doc. 76-5, p. 112, 212). On November 4, 2021, at ASMP, Plaintiff saw Dr. Decoons, who recommended that Plaintiff pursue surgical intervention after his release from the Georgia Department of Corrections. (Doc. 76-5, p. 51). Dr. Decoons's recommendation is reflected in Plaintiff's medical record from the November 5, 2021, visit with the nurse practitioner at CSP. (Doc. 76-5, p. 47). Plaintiff was released from GDC custody in January 2022. (Doc. 76-4, p. 2). Plaintiff is now in the custody of the Federal Bureau of Prisons. *See, e.g.*, (Doc. 75-6) (envelope from Plaintiff's last court submission showing Plaintiff's return address as Jesup FCI in Jesup, Georgia).

## ANALYSIS

### 1. Defendant's Motion for Judgment on the Pleadings

Defendant's motion asks for two alternative forms of relief. He first moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Doc. 76-1, p. 4-5). Defendant suggests that Plaintiff's complaint failed to adequately allege a claim for deliberate indifference. (*Id.*) For judgment on the pleadings to be granted as a matter of law, the pleadings must show that no disputed material facts exist. *Perez v. Wells Fargo N.A.,* 774 F.3d 1329, 1336 (11th Cir. 2014). When evaluating the facts, the reviewing court accepts material facts set forth in the non-moving party's pleadings as true and construes those facts most favorably to the non-moving party. *Id.* If disputes of material fact exist after reviewing the pleadings as required, a motion for judgment on the pleadings must be denied. *Id.* Here, Defendant is the party requesting judgment on the pleadings in his favor. Therefore, when the Court considers Defendant's motion, the pleadings will be construed against them, and Plaintiff's pleadings will be taken as true.

This is the same standard used when the Court screened Plaintiff's recast complaint. The PLRA obligates the district courts to conduct a preliminary screening of every complaint filed by

a prisoner who seeks redress from a government entity, official, or employee. *See* 28 U.S.C. § 1915A(a). Screening is also required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding *in forma pauperis*. Both statutes applied in this case, and the standard of review is the same. When conducting preliminary screening, the Court generally must accept the factual allegations in the complaint as true. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006), abrogated in part on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003). *Pro se* pleadings, like the one in this case, are "held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes*, 350 F.3d at 1160 (citation omitted). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (cleaned up). The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'" *Id.* (citation omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The pleading cannot "merely create[] a suspicion that the pleader might have a legally cognizable right of action." 5 Charles Alan Wright & Arthur Alan Miller, *Federal Practice and Procedure* § 1206 (4th ed. June 2024 update). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. "Threadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282–84 (11th Cir. 2003).

The Court laid out this entire standard in its July 14, 2023, screening order. (Doc. 14). Following a thorough review of Plaintiff's complaint in accordance with Section 1915A, the Court permitted Plaintiff's claim of deliberate indifference to proceed. (*Id.*) The standard for failure to state a claim under Section 1915A is the same as it is under F.R.C.P 12(b)(6), and is thus the same for motions under F.R.C.P. 12(c). *Daker v. Laidler*, 2024 WL 2891084, at *2 (11th Cir. 2024) (citing *Jones*, 549 U.S. at 215); *Clark v. LC Halsten LLC*, 2026 WL 1004818, at *3 (11th Cir. 2026) (citing *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022).

Contrary to Defendant's argument, Plaintiff's complaint is not "devoid of facially plausible allegations" to set forth a deliberate indifference claim. (Doc. 76-1, ¶ 20). The Court determined at screening that Plaintiff's allegations made out a possible claim for deliberate indifference against Defendants and permitted this claim to proceed for further factual development. (Doc. 14, p. 3-6). Specifically, the Court explained that Petitioner alleged Defendant was aware of Plaintiff's hip condition and of the need for surgery but intentionally denied or delayed care that worsened his condition, which at the pleading stagewas sufficient to set forth a deliberate indifference theory. (*Id.*) For purposes of a motion for judgment on the pleadings, Plaintiff has sufficiently stated a

plausible claim for deliberate indifference against Defendant Brown, and judgment on the pleadings is not warranted.

**2. Defendant's Motion for Summary Judgment**

Defendant alternatively moved for summary judgment based upon Plaintiff's inability to establish an evidentiary basis for his claim that Defendant was deliberately indifferent to a serious medical need. The undisputed material facts established by the full record in this case, even construed in Plaintiff's favor, demonstrate that there is no genuine issue of material fact and that Defendant is entitled summary judgment.

**SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of informing the Court of the basis for its motion, and of citing "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that support summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). In resolving motions for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014).

Plaintiff failure to response to the motion for summary judgment and rebut the Defendant's statement of undisputed material facts triggers consequences under both the Federal Rules of Civil Procedure and this Court's Local Rules. Federal Rule of Civil Procedure 56(e)(2) provides that if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion." Rule 56(e)(2). This Court's Local Rule 56 similarly provides: "All material facts contained in the movant's statement

which are not specifically controverted by specific citation to particular parts of materials in the record shall be deemed to have been admitted, unless otherwise inappropriate." MDGA Local Rule 56. Finally, Federal Rule of Civil Procedure 56(e)(3) provides that the Court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to" summary judgment. Rule 56(e)(3). *See also Urdaneta v. Wells Fargo Bank, N.A.*, 734 F. App'x 701, 704 (11th Cir. 2018). Accordingly, because Defendant properly supported his factual assertions with specific citations to the record, and because Plaintiff failed to respond to them, Defendant's facts may be accepted by the Court as undisputed.

**A. Plaintiff's medical deliberate indifference claim against Defendant Brown**

The record shows that Plaintiff cannot establish that Defendant was deliberately indifferent to his hip condition and need for surgery or that Defendant's conduct worsened his condition. Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as it constitutes the necessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "The knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference." *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 704 (11th Cir. 1985). A delay of care may also constitute deliberate indifference. *See Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (explaining that a delay which worsens the condition can also be a serious medical need). To establish a claim of deliberate indifference to a serious medical need, a prisoner must show: (1) that he had a serious medical need, (2) that a defendant acted with deliberate indifference to that need, and (3) that his injury was caused by the defendant's wrongful conduct. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

"To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective inquiry." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). Specifically, the prisoner must show that he suffered an objectively, sufficiently serious deprivation. *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To satisfy the objective component of deliberate indifference, a prisoner must demonstrate that his medical need "has been diagnosed by a physician as mandating treatment . . . or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Goebert*, 510 F.3d at 1326. "A serious medical need can also be determined by 'whether a delay in treatment exacerbated the medical need or caused additional complications.'" *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019).

To satisfy the subjective inquiry, "a deliberate-indifference plaintiff must prove that the defendant acted with subjective recklessness as used in the criminal law, . . . [and] in order to do so, the plaintiff must show that the defendant was subjectively aware that [her] own conduct put the plaintiff at substantial risk of serious harm." *Wade*, 106 F.4th at 1255 (internal quotations and citation omitted).[2] The "plaintiff must show that the defendant official was subjectively aware that [her] own conduct—again, [her] own actions or inactions—put the plaintiff at substantial risk of serious harm." *Id.* at 1258. Even if the risk was known, a defendant may still not be found liable, so long as [she] acted reasonably. *Id.* at 1255 (citing *Farmer*, 511 U.S. at 844, 837).

Plaintiff claims that Defendant Brown was deliberately indifferent by failing to facilitate and ensure that he receive recommended hip surgery and that Defendant Brown delayed care, which increased his pain and worsened his condition by increasing his risk of other complications.

[2] *Wade* settled an intra-circuit split between whether a defendant must act with "more than mere negligence" or "more than gross negligence," but clarified that the appropriate standard was "subjective recklessness as used in criminal law." *Wade*, 106 F.4th 1251.

*See* (Docs. 13, 14). Plaintiff further alleged that Defendant told him he could get surgery once he was no longer in GDC custody. (*Id.*) The record, even when construed in Plaintiff's favor as the non-movant, shows that Defendant was not deliberately indifferent to a serious medical need through any delay of treatment. Instead the record establishes that Defendant Brown and other medical staff provided regular and routine care to address Plaintiff's hip condition and continued to refer Plaintiff for orthopedic consultations even after Plaintiff refused to have the procedure done. Plaintiff cannot establish that Defendant Brown was deliberately indifference to his hip condition.

For purposes of the motion, Plaintiff's degenerative hip condition and related pain constitute a serious medical need. Even though the impairment amounted to an objectively serious medical need, the record before the Court fails to create a genuine issue of material facts as to whether Defendant Brown acted with the necessary subjective recklessness to show deliberate indifference. The record shows that Defendant Brown did not ignore Plaintiff's condition but instead continued to treat Plaintiff and refer him to outside specialists, even after Plaintiff refused a hip biopsy in 2019. The medical record shows that Defendant Brown and other medical staff at WSP continuously treated Plaintiff's hip pain throughout his time at the prison and referred Plaintiff to outside specialists at ASMP when Plaintiff expressed interest in having hip surgery after his initial refusal. Defendant Brown even expedited the requests for the outside consultations. Moreover, contrary to Plaintiff's allegations, it was not Defendant Brown, but instead Dr. Decoons, the orthopedic specialist at ASMP, who suggested Plaintiff could get surgery once he was no longer in GDC custody. Defendant Brown simply recorded that note in Plaintiff's WSP treatment notes. The record also shows that it was Defendant Brown who ordered a wheelchair for Plaintiff and

referred him to a 24-hour facility that could better accommodate his physical conditions following the specialist's recommendation that Plaintiff not have surgery at that time.

Contrary to Plaintiff's allegations that Defendant failed to treat or interfered in the treatment of his hip, the record does not show that Defendant Brown disregarded Plaintiff's condition at all, much less in the manner required to demonstrate a deliberate indifference claim. Nothing suggests the care given to Plaintiff by Defendant Brown was grossly inadequate, easier but less effective compared to other treatments, or amounted to no treatment at all. *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) ("A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference.") (citations omitted). Instead, the undisputed record, even construed favorably to Plaintiff, shows that he received treatment for his hip condition with multiple providers, including Defendant Brown. Plaintiff has not produced evidence to show that Defendant Brown was deliberately indifferent, intentionally delayed care, or interfered in Plaintiff's recommended surgery. The record shows that Defendant Brown's treatment was reasonable under the circumstances and falls far from the necessary criminal recklessness standard contemplated by *Wade*. Because Plaintiff cannot establish that Defendant was deliberately indifferent to a serious medical need, Defendant is entitled to summary judgment.

## CONCLUSION

Plaintiff's complaint withstands Defendant Brown's motion for judgment on the pleadings, and thus, it is **RECOMMENDED** that that portion of the motion (Doc. 76) be **DENIED**. However, because Plaintiff cannot establish that Defendant Brown acted with deliberate indifference to a serious medical need, Defendant Brown is entitled to judgment as a matter of law. It is therefore **RECOMMENDED** that Defendant's motion for summary judgment (Doc. 76) be **GRANTED**.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. Any objection is limited in length to **TWENTY (20) PAGES.** *See* M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 10th day of July, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge